EMIL DE MITRY, Plaintiff, *v.* GRACE H. DE MITRY, Defendant.

Supreme Court, Equity Term, Monroe County, August 10, 1951.

*Hyman G. Gould* for plaintiff.

*Leo T. Minton* for defendant.

ROBERTS, J. In this action the plaintiff husband seeks a declaratory judgment declaring that a Florida divorce obtained by the defendant wife is null and void and further declaring the plaintiff to be the lawful husband of the defendant.

The parties, who both resided in New York State, were married at the village of East Rochester, New York, on December 31, 1949. Thereafter the wife went to the State of Florida where she obtained a decree of divorce on November 27, 1950, on grounds not recognized by the State of New York. The husband was served by publication in the Florida action and did not appear therein.

Since the decision in *Williams* v. *North Carolina* (317 U. S. 287, 325 U. S. 226), a divorce decree obtained in another State, even without personal service or appearance by the defendant in that action, is prima facie valid in this State, but the finding in the other State that the plaintiff in the divorce action was there domiciled may be attacked collaterally in this State. If the courts of this State then find that the plaintiff in the divorce action was not in fact domiciled in the State where the decree was obtained, such decree is thereafter treated as being null and void and is no longer entitled to recognition in this State. (*Matter of Lindgren*, 293 N. Y. 18; *Caldwell* v. *Caldwell*, 298 N. Y. 146; *Garvin* v. *Garvin*, 302 N. Y. 96, 102; *Imbrioscia* v. *Quayle*, 278 App. Div. 144.)

The parties had both previously been married, the wife having no children by her prior marriage, the husband having three children by his prior marriage. There are no children of the present marriage. The husband had lived in Rochester or vicinity since 1919 and the wife came to Rochester in 1947 or 1948 after the termination of her first marriage. She rented an apartment and obtained employment after coming here. After

the parties were married on December 31, 1949, the husband moved into the wife's apartment on Oliver Street where they resided together for less than a month. On January 28, 1950, the husband moved out of the apartment at the request of his wife but thereafter continued to see her and on occasions spent the night or weekend at the apartment.

On January 26, 1950, two days before the separation occurred, the wife verified a complaint in an annulment action which was served on the husband on February 3, 1950. In the complaint she alleges that she is and has been for more than one year past a resident of the city of Rochester, N. Y. She also alleged in her complaint that if the annulment was not granted, she would have to give up her home and position in Rochester and move to some other State. Thereafter the wife's application for temporary alimony was denied, Mr. Justice VAN DUSER in a memorandum decision rendered at Special Term pointing out that on the papers submitted, the plaintiff's probability of success in the annulment action was not bright to say the least. The husband interposed an answer in the annulment action and the same was noticed for trial whereupon the wife, doubtful of her success, abandoned the action and it was stricken from the calendar.

On June 16, 1950, the wife left Rochester, leaving her apartment and its furnishings intact and telling her husband that she was going to visit friends in New York City. Early in July she arrived in Florida where she was required to establish a residence of ninety days before commencing a divorce action. Immediately after this waiting period had expired and on October 9, 1950, the Clerk of the Circuit Court of the Eleventh Judicial District of Florida issued a notice by publication of the pendency of a divorce action brought in that State by the wife. This notice was received shortly thereafter by the husband by mail. He did not appear in the Florida divorce action and a final decree was granted the wife on November 27, 1950. Immediately upon the granting of the decree she returned to Rochester, N. Y., took up her residence in the apartment which she had maintained during her absence and again obtained employment here.

The wife testified that she went to Florida for her health and intended to make that State her permanent domicile and that she returned to Rochester only because her apartment was under lease until June, 1951, and that after the lease expired she intended to sell her things and return to Florida.

The testimony of the wife that she intended to make Florida her permanent domicile is not convincing in view of her entire conduct. Moreover no evidence is presented corroborating such intention. She said that while in Florida she lived at a hotel and an apartment and finally stated that while she was there, she stayed with friends. There is absolutely no evidence of any attempt on her part to obtain permanent residential quarters in Florida, to obtain employment there, or do any of the other things which would be expected of a person establishing a permanent domicile in that State. Although the wife claimed that New York State was her domicile in the annulment action and that Florida was her domicile in the divorce action, she testified at the present trial that she has always regarded and still regards the State of Indiana as her home. Other statements of the wife do not appear too consistent or reliable. In her verified complaint in the annulment action she alleged: " That since said marriage plaintiff has continued to live in her own apartment, and the defendant to live with his family and that said marriage of the plaintiff and defendant herein has never been consummated." In the complaint in the divorce action, however, she alleged: " Your Plaintiff and the Defendant lived together as husband and wife from the date of their marriage until their separation June 16, 1950." The court is not disposed to place great reliance on the defendant's uncorroborated testimony that she went to Florida with an intention of establishing her domicile in that State. On the contrary, the evidence produced here by the plaintiff is ample to sustain the burden of proof which he must assume in showing that the defendant's residence in Florida was not a bona fide domicile and that hence the Florida decree is null and void and not entitled to recognition in this State. The court well remarked in *Forster* v. *Forster* (182 Misc. 382, 387): " It is well known that in the usual case there is no real intention of remaining in the other State indefinitely, nor of going to it for any purpose except to get a divorce. Where the object of taking the trip is to overcome a meritorious defense which otherwise would be interposed, the gravest kind of injustice can result if our courts hesitate to declare the domicile in the other State to be as fictitious as it really is. Where there has been but a brief sojourn in another State, default decrees should be set aside upon slight additional evidence that there was no intention of remaining indefinitely."

The question remains whether the plaintiff is entitled to obtain the relief he seeks in this action for a declaratory judgment. Section 473 of the Civil Practice Act together with rule 212 of the Rules of Civil Practice vest a wide discretion in the court in granting relief in an action for a declaratory judgment. Its general purpose is to serve a practical end in quieting or stabilizing an uncertain or disputed jural relation, particularly where no other adequate remedy is provided. (*James* v. *Alderton Dock Yards,* 256 N. Y. 298.) It has frequently been held that such an action is proper for the purpose of obtaining a declaration of the marital status of the parties. (*Baumann* v. *Baumann,* 250 N. Y. 382; *Lowe* v. *Lowe,* 265 N. Y. 197; *Langsam* v. *Langsam,* 260 App. Div. 1034; *Lea* v. *Lea,* 180 Misc. 719, affd. 266 App. Div. 952; *Engel* v. *Engel,* 275 App. Div. 14.) Likewise the courts have on occasion denied relief in such an action. (*Somberg* v. *Somberg,* 263 N. Y. 1; *Krakower* v. *Krakower,* 264 App. Div. 912, affd. 291 N. Y. 604.) Prior to the decision in *Williams* v. *North Carolina* (317 U. S. 287, 325 U. S. 226, *supra*), a divorce granted in another State without personal service upon the defendant or without the appearance of the defendant in the action was treated by the courts of this State as a nullity. Under this state of the law, it might well be that a court would decline to grant relief in an action for a declaratory judgment seeking to determine the marital status of the parties unless property rights, the rights of children, or other special circumstances existed making such a declaration useful. For similar reasons our courts then refused to permanently enjoin an action in another State for a divorce because the decree in any event would have been a nullity here. (*Goldstein* v. *Goldstein,* 283 N. Y. 146.) Since the decisions in *Williams* v. *North Carolina* (317 U. S. 287, 325 U. S. 226, *supra*) the divorce decree in the other State is no longer a nullity. It is prima facie a valid decree entitled to recognition by the courts of this State. In view of this change in the law, our courts no longer hesitate upon a proper showing to enjoin the divorce action in the other State. (*Garvin* v. *Garvin,* 302 N. Y. 96, *supra*.) The same reasons should now impel our courts to grant a declaratory judgment fixing the marital status even though there are no children of the marriage and no property rights presently involved where the issue is raised as to whether the divorce decree was procured by fraud and misrepresentation relating to the question of domicile. In *Engel* v. *Engel* (275 App. Div. 14, 17, *supra*) the court said: " Among the factors that would influence the exer-

cise of discretion in granting declaratory relief would be the contact which this State has had with the marital status sought to be adjudicated and the *bona fides* and usefulness of the objective sought to be attained.'' It is felt that this test has been met in the present case and the plaintiff should here be granted the relief he seeks.

The defendant wife claims, however, that the plaintiff husband has been guilty of laches for not contesting the Florida divorce action before it reached final judgment. The husband was under no duty or obligation to submit himself to the jurisdiction of the Florida court or to litigate in that State the *bona fides* of his wife's Florida domicile. His failure to do so does not constitute laches. It is argued further by the defendant wife that the husband should have sought to enjoin the Florida action before the final decree was rendered. Injunctive relief was available to the husband if he was able to obtain jurisdiction of the person of his wife. With the wife in Florida prosecuting her divorce action, it is doubtful if such jurisdiction could have been obtained. (*May* v. *May,* 233 App. Div. 519; *Robinson* v. *Robinson,* 254 App. Div. 696.) There was, moreover, no duty on the part of the husband to seek an injunction even though such remedy were available to him and his failure to do so does not estop him from maintaining the present action.

After the final decree in the Florida action was granted, it was prima facie entitled to recognition in this State as a valid dissolution of the marriage. The husband claimed that the decree was invalid because the wife had established no domicile in Florida. His only remedy to clarify and fix his marital status is in an action such as this for a declaratory judgment. Under similar circumstances where marital status has been shrouded in doubt, the Domestic Relations Court of the City of New York has even advised that the parties go into Supreme Court and obtain a declaratory judgment in order that such marital status might be finally fixed and determined. (" *Morton* " v. " *Morton* ", 199 Misc. 547, 551.)

Plaintiff is entitled to judgment holding the Florida decree to be null and void and declaring the plaintiff to be the lawful husband of the defendant, without costs to either party.

Let judgment be entered accordingly.